UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAYSHIA EDWARDS, | ) | |
| RAVEN STEINMETZ, | ) | |
| DARYANE SHADDAY, | ) | |
| MICHELLE BLATCHFORD, | ) | |
| SARAH COVEY, | ) | |
| PENELOPE LEWIS, | ) | |
| DEVIN MESSAMORE, | ) | |
| JEREMIAH ROOSA, | ) | No. 1:18-cv-03170-RLY-DLP |
| KRISTA STIGERS, | ) | |
| JADE DOGGETT, | ) | |
| RACHAEL BUSHELL, | ) | |
| HEATHER DOGGETT, | ) | |
| LORI NEWHOUSE, | ) | |
| ROBIN BOSTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEY 2 RECOVERY, INC., | ) | |
| AMERICAN EDUCATION ASSETS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

This matter has been referred to the Undersigned to issue a Report and Recommendation on the parties' Joint Motion for Final Approval of Class Action Settlement, Dkt. [180] and Plaintiffs' Motion for Final Approval of Attorney's Fees and Assistance Awards, Dkt. [172].[1] For the reasons set forth below, the Magistrate Judge recommends that both Motions be **GRANTED**.

---

[1] On July 31, 2019, Judge Richard L. Young designated the Undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636. (Dkt. 136).

## I.    BACKGROUND AND CLAIMS ADMINISTRATION PROCESS

On October 10, 2019, this Court entered a preliminary order of approval of the parties' Class action settlement.  (Dkt. 159.)  The Court preliminarily certified (for settlement purposes only) the proposed Class, consisting of: "All students of Harrison College with a last day of attendance on or after September 1, 2018, with accounts placed with Key 2 and/or AEA, as identified in documentation provided to Key 2 and/or AEA by Educational Management Corporation d/b/a Harrison College."  (Dkt. 159 at 3.)  In addition, the Order (1) preliminarily approved the Settlement Agreement; (2) appointed Robin Boston, Sarah Covey, Penelope Lewis, Devin Messamore, Jeremiah Roosa, Chris Weber, Raven Steinmetz, Jade Doggett, Rachael Bushell, Heather Doggett, and Lori Newhouse as Class Representatives; (3) appointed Andrea L. Ciobanu of Ciobanu Law PC, Charles R. Webb of The Webb Law Centre, PLLC, and Dennis C. Taylor and Talcott J. Franklin of Talcott Franklin P.C. as Class Counsel; and (4) appointed First Class, Inc. as Settlement Administrator.  (*Id.*)  Plaintiffs subsequently filed their Motion for Attorney's Fees and Assistance Awards on December 13, 2019 (Dkt. 172), and the parties filed their Joint Motion for Final Approval of Class Action Settlement on January 29, 2020 (Dkt. 180).

As set forth in the parties' joint Preliminary Approval Motion (Dkt. 132), the Settlement Agreement (Dkt. 132-1) provides the following benefits to the Class to be paid by Defendants Key 2 Recovery, Inc. ("Key 2") and American Education Assets, LLC ("AEA") (collectively, the "Settling Defendants"):

(1)    Forgiveness of all accounts of students of Harrison College with a last date of attendance on or after September 1, 2018, which were placed with Key 2 for collection.[2] Class members are not required to opt-in to receive this relief;

(2)    Class Fund[3] of $1,626.00 from which all members of the Class, who affirmatively opt-in, will be paid on a pro rata basis;

(3)    All monies remaining in the Class Fund after the expiration of all checks to the Class will be donated to the Humane Society of Indianapolis as a *cy pres* award;

(4)    All payments due to the Class Administrator, First Class, Inc. to cover the administration costs and expenses, including those related to the mailing of 1,230 notices to members of the Class;

(5)    Incentive awards in the amount of $200.00 each, subject to Court's approval, to Plaintiffs Robin Boston, Sarah Covey, Devin Messamore, and Rachel Bushell for serving as Class Representatives and devoting significant personal time to pursuing these claims, including, providing documentation, communicating with Class Counsel, actively engaging in the litigation process and participating in the settlement conference conducted in this case; and

(6)    Attorney's fees and costs to Plaintiffs' Class Counsel totaling $17,500.00, subject to Court's approval.

---

[2] Per the Settlement Agreement, Key 2 has not pursued collection of these accounts pending final approval of the Class Action Settlement.

[3] The amount of the Class Fund was determined pursuant to 15 U.S.C. § 1692k(a)(2)(B).

On October 10, 2019, First Class, Inc. was appointed by the Court to act as Settlement Administrator, to provide notification and administration services in accordance with this Court's Preliminary Approval Order (Dkt. 159) and the Settlement Agreement. (Dkt. 132-1). On or about October 21, 2019, the Settling Defendants mailed a check in the amount of $2,426.00 to First Class, Inc. for the Class Fund and incentive awards. (Dkt. 180).

On October 30, 2019, the Settling Defendants complied with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, by mailing a Notice of Proposed Class Action Settlement to the following federal and state officials: the Attorney General of the United States, the Secretary of State for the State of Indiana, the Attorney General of the State of Alabama, the Attorney General of the State of Arizona, the Attorney General of the State of California, the Attorney General of the State of Florida, the Attorney General of the State of Georgia, the Attorney General of the State of Illinois, the Attorney General of the State of Kansas, the Attorney General of the Commonwealth of Kentucky, the Attorney General of the State of Michigan, the Attorney General of the State of Missouri, the Attorney General of the State of Mississippi, the Attorney General of the State of North Carolina, the Attorney General of the State of Nevada, the Attorney General of the State of Ohio, the Attorney General of the State of Oregon, and the Attorney General of the State of Texas.  (Dkts. 161, 161-1.)

On November 8, 2019, First Class, Inc. mailed approved notices (Dkt. 158-1 and Dkt. 159) with postage prepaid and forwarding service requested to 1,230

members of the Class appraising them of their rights to either submit a claim, exclude themselves, or object to the Settlement. (*See* Dkt. 180-1; Dkt. 159.) The results of the mailing were as follows:

1. 101 notices were returned by the U.S. Postal Service as undeliverable with no forwarding address (Dkt. 180-1 ¶ 9);

2. 6 notices were returned by the U.S. Postal Service with a forwarding address and re-mailed (Dkt. 180-1 ¶ 10);

3. 129 valid claim forms were received, which were postmarked on or before the cutoff date of December 23, 2019 (Dkt. 180-1 ¶ 13); and

4. 7 late claim forms were received, which were postmarked after the cutoff date of December 23, 2019 (Dkt. 180-1 ¶ 14; Dkt. 180 at 3 n.3).[4]

The deadline for submitting claims, for opting out, and for objecting has passed. There have been no objections filed and no requests for exclusion. Based upon the claims submitted, the Claims Administrator, Class Counsel, and Settling Defendants represent that there are an estimated 136 valid claims. The Class Fund will be distributed among those members of the Class who affirmatively opted-in. In addition, in accordance with the Class Settlement Agreement (Dkt. 132-1 at 6), the Settling Defendants shall forgive all accounts of students of Harrison College with a last day of attendance on or after September 1, 2018 totaling approximately $379,514.97. (Dkt. 132-1 at 6).[5]

---

[4] At the February 13, 2020 final approval hearing, the parties notified the Court of one additional late filing. Class Counsel requested that the seven Class members who returned late claim forms be included in distribution of the Class Fund. Settling Defendants did not object to this request. The Undersigned granted Class Counsel's motion to include the seven Class members who returned late claim forms.

[5] At the February 13, 2020 final approval hearing, the Settling Defendants notified the Court of the total amount of forgiveness of the student accounts.

## II.    FINAL APPROVAL HEARING

The Undersigned received and reviewed the following documents submitted in support of Final Approval:

1.  The parties' Joint Motion for Final Approval of Class Action Settlement with supporting affidavits and exhibits filed on January 29, 2020 (Dkts. 180, 180-1, 180-2);

2.  Affidavit of First Class, Inc. Case Manager Bailey Hughes regarding the administration and implementation of notice to the Class filed on January 29, 2020 (Dkt. 180-1);

3.  Plaintiffs' Motion for Attorney's Fees and Assistance Awards (Dkt. 172) and Memorandum of Law in Support (Dkt. 173) filed on December 13, 2019;

4.  Declaration of Class Counsel Talcott Franklin regarding Plaintiffs' Motion for Final Approval of Attorney's Fees and Assistance (Dkt. 173-1) filed on December 13, 2019.

On Thursday, February 13, 2020, the Undersigned conducted a Final Approval Hearing at the U.S. District Courthouse, 46 East Ohio Street, Room 243, Indianapolis, Indiana.  Appearing at the hearing on behalf of the Plaintiffs were Talcott J. Franklin from Talcott Franklin PC and Andrea L. Ciobanu of Ciobanu Law, PC.  The Settling Defendants were represented by Nicholas W. Levi and Jennifer M. Van Dame of Kightlinger & Gray LLP. No other persons or their representatives appeared in person or by telephone at the hearing.

6

Class Counsel summarized the terms of the settlement, which are set forth in the Class Settlement Agreement filed with the Court on July 12, 2019.  (Dkt. 132-1.) The Class Settlement Agreement resolves all claims against Settling Defendants arising from the Class members' enrollment at Harrison College, operated by Educational Management Corporation, and any collection of accounts originating out of the Class members' enrollment at Harrison College, including any alleged violations of the Fair Debt Collection Practices Act.  At the February 13, 2020 hearing, the Court also heard arguments on the Plaintiffs' Motion for Final Approval of Attorney's Fees and Assistance Awards.

### III.    FINAL APPROVAL OF SETTLEMENT

Settlement of class claims brought under Fed. R. Civ. P. 23 may be approved if the Court finds the settlement to be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Seventh Circuit Court of Appeals has characterized the Court's role as that of a fiduciary to the class members in considering whether a settlement is fair and reasonable.  *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014).  In this Report and Recommendation, the Undersigned will outline and discuss the relevant factors to assist the Court in determining whether this Class action settlement is fair, adequate, and reasonable, and should be finally certified and approved.

### A.  Class Certification

In order to certify a class, the Court must find that the putative class satisfies the four prerequisites set forth in Fed. R. Civ. P. 23(a).  If the putative class satisfies

these prerequisites, the Court must additionally find the putative class satisfies Fed. R. Civ. P. 23(b), which sets forth the types of class actions that may be maintained.

Rule 23(a) requires the party seeking class certification to demonstrate that: (1) the members of the class are so numerous that joinder is impracticable (*i.e.,* numerosity); (2) there are questions of law or fact common to the proposed class (*i.e.,* commonality); (3) the class representative's claims are typical of the claims of the class (*i.e.,* typicality); and (4) the class representative will fairly and adequately represent the interests of the class (*i.e.,* adequacy of representation).  Fed. R. Civ. P. 23(a)(1)–(4).

## 1.  Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is typically satisfied where there are at least 40 members of a putative class.  *See, e.g., Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006).  The Class in this case has 1,230 members. (Dkt. 180-1).  The numerosity requirement is, therefore, satisfied.

## 2.  Commonality

Rule 23(a)'s second requirement is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury'. . . ."  *Wal– Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).  "Their claims must depend on a common contention" that must be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 341.

Commonality is satisfied in this case, as all Class members' claims depend upon the common contention that the Settling Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692., *et seq.* ("FDCPA"), in attempting to collect allegedly delinquent accounts originating out of the Class members' enrollment at Harrison College, despite Harrison College's closure. Class members contend that due to Harrison College's closure, or the manner in which the school closed, Settling Defendants attempted to collect debts that were not owed. Each claim, therefore, arises from the same alleged conduct and same contention regarding the validity of the debts at issue.

### 3. Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied when a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

In this case, each Class Representative's claim arises from the same alleged conduct of the Settling Defendants (*i.e.,* collection on accounts originating out of the Class members' enrollment at Harrison College) and asserts the same legal theory

(*i.e.,* that such collection activity violated the FDCPA).  The Class Representatives' claims, therefore, are typical of the Class' claims.

### 4. Adequacy

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy of representation requirement involves two inquiries: (1) whether the plaintiffs' attorney is qualified, experienced, and capable of conducting this type of litigation, and (2) whether the named plaintiffs' interests are not conflicting or antagonistic to those of the class.  *See, e.g., Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

The Class Representatives have sufficiently demonstrated that they share the same interests and suffered the same injuries as those suffered by members of the Class.  Class Counsel has also demonstrated their ability to fairly and adequately protect the interests of the Class by working with Settling Defendants to reach a fair, reasonable, and adequate settlement promptly.  Class Counsel obtained Settling Defendants' agreement not to pursue collection on the accounts at issue pending mediation and then pushed for an early mediation that resulted in this settlement, which includes debt relief and other benefits for the Class.  Through these actions, Class Counsel has demonstrated their qualifications, experience, and capability to conduct this type of litigation. Accordingly, the Undersigns finds that the Class

Representatives and Class Counsel fairly and adequately represent protect the interests of the Class.

### 5. Rule 23(b) Analysis

Lastly, as a final hurdle before class certification, the Plaintiffs must show that they fit into at least one of the circumstances outlined in Rule 23(b), which sets forth when a class action may be maintained. Under Rule 23(b)(3), a class action may be maintained if the court finds that the questions of law or fact common to class members *predominate* over any questions affecting individual class members, and that a class action is *superior* to other available methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3) (emphases added). Courts consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. *Id*.

"Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and Rule 23(b)(3). Rule 23(a)(2) requires that common issues exist; Rule 23(b)(3) requires that they predominate." *Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141, at *6 (N.D. Ill. Aug. 9, 2002) (quoting *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1419 (N.D. Ill. 1996)). Because the Class' claims turn on the outcome of the same legal question — namely, whether the Settling Defendants violated the FDCPA by attempting to collect accounts

originating out of the Class members' enrollment at Harrison College, despite Harrison College's closure — it makes sense to adjudicate all of their claims at once, rather than having hundreds of class members file individual lawsuits. The question of whether the FDCPA was violated by any attempt to collect the accounts at issue, due to Harrison College's closure or the manner in which the school closed, predominates over any questions affecting individual Class members. In addition, the Undersigned will note that Harrison College was formerly headquartered, and had various campuses, in the Southern District of Indiana.

For the foregoing reasons, the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3) are met, and the Undersigned recommends that final certification of the proposed Class be granted.

### B. Claims Process and Responses to Class Notice

The Undersigned believes that the form, substance, and delivery of the Class notices was fair and reasonable and fairly appraised the Class members of the terms of the proposed Settlement Agreement, how they could seek additional information, opt out of the settlement, or object to the proposed settlement agreement. As noted previously, there have been no objections or requested exclusions from the settlement.

On August 19, 2019, the Undersigned conducted a telephonic status conference to discuss the contents of the proposed class notice and provided necessary revisions to the parties to ensure that the class notices were clear and that they adequately explained the terms of the proposed settlement agreement. (Dkt.

12

150.)  On October 10, 2019, the parties submitted a revised class notice and claim form that adequately addressed the Court's previous concerns. (Dkt. 158-1). The Undersigned approved the revised class notice on October 10, 2019. (Dkt. 159).

The Class Notices were mailed on November 8, 2019 (Dkt. 180-1), and the members of the Class were given until December 23, 2019, to submit claim forms to the Court-appointed Settlement Administrator (Dkt. 159 at 4).  The Undersigned believes that the claims process was straight-forward, because the mailing contained both a Class Member identification number, a summarization of the case, and a claim form. (Dkt. 158-1).  As a result of this simple claims procedure, only 101 of 1,230 notices (or 8.21% of notices) were returned as undeliverable with no forwarding address; a substantial number of claims (129) were timely submitted; and only 7 late claims were received.  (Dkt. 180-1.) In addition, the Settling Defendants filed their notice of compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, confirming their mailing of notice to all required federal and state officials.  (Dkt. 161-1.) As noted above, the Undersigned recommends that the 7 late claim forms be allowed, as agreed by the parties.

The Undersigned recommends that this Court find that the notice requirements set forth in the Class Action Fairness Act, 28 U.S.C. § 1715, and all other applicable law have been satisfied. The Notice Plan previously approved by this Court has been followed and thus the Court should find that the process satisfied due process requirements.

### C.  Settlement Agreement

If a court certifies a class, the next step is to evaluate the Class Settlement Agreement itself.  Because the proposed settlement would bind all class members, the Court may approve the settlement only after finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

In evaluating whether a settlement is "fair, reasonable, and adequate," courts consider a number of factors, including: (1) the strength of the plaintiff's case compared to the amount of defendant's settlement offer; (2) an assessment of the likely complexity, length, and expense of continued litigation; (3) an evaluation of the amount of opposition to the settlement by affected parties; (4) the opinion of competent, experienced counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement.  *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

The Undersigned concludes these factors weigh in favor of final approval of the Class Settlement Agreement, which was the result of arms-length negotiations between experienced attorneys and mediated by the Undersigned at a Settlement Conference on April 4, 2019.  (Dkts. 104, 132-1.)

### 1.  Strength of Plaintiff's Case Compared to Settlement

The "most important factor" in determining whether a proposed settlement satisfies Rule 23(e) is the "strength of [plaintiffs'] case on the merits balanced against the amount offered in the settlement."  *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 284 (7th Cir. 2017).  Specifically, the Court must

"estimate the likely outcome of a trial" to "evaluate the adequacy of a settlement." *Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014). In weighing the merits of the case against the settlement offer, the Seventh Circuit has recognized that valuing hypothetical, continued litigation is an inexact science. *Synfuel Techs.*, 463 F.3d at 653. Thus, courts are only expected to estimate and come to a "ballpark valuation." *Id.* (quoting *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 285 (7th Cir. 2002)). Moreover, a settlement need not provide the class with the maximum possible damages to be reasonable. As the Seventh Circuit has cautioned, the Court should not reject a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996).

Here, the primary allegation in the Fourth Amended Complaint is that Settling Defendants attempted to collect debts that the Plaintiffs did not owe. (Dkt. 139). Specifically, Plaintiffs argue that Indiana's Postsecondary Credit Bearing Proprietary Education Institutional Accreditation Act, Ind. Code § 21-18.5-6-21, made these debts void upon Harrison College's closure and that any attempts to collect the debts were inherently harassing under the circumstances. Settling Defendants dispute this contention as an inaccurate reading of the Indiana statute, and neither side has directed the Court to any Indiana state court ruling on the question. The Undersigned notes, however, that even if the Plaintiffs are correct and the debts in question became void when Harrison College closed, an FDCPA claim generally "has nothing to do with whether the underlying debt is valid."

15

*Weldon v. Asset Acceptance, LLC*, No. 1:10-cv-0660-JMS-MJS, 2011 WL 902018, at

*3 (S.D. Ind. Mar. 14, 2011) (quoting *Rhines v. Norlarco Credit Union*, 847 N.E.2d

233, 238 (Ind. Ct. App. 2006)).  Liability, if any, stems from the method of collection.

*Id*; *see also Walton v. EOS CCA*, 885 F.3d 1024, 1027-8 (7th Cir. 2018) (holding that

a debt collector has no obligation under the FDCPA to independently investigate the

legal validity of the debt the creditor claims it is entitled to seek, and noting that

affirmative requirements placed on debt collectors under the FDCPA require

"nothing more than the debt collector confirming in writing that the amount being

demanded is what the creditor is claiming is owed.").

Thus, even assuming the debts were void, which Settling Defendants dispute,

there may have been no FDCPA violation.  Plaintiffs do allege generally that the

Settling Defendants engaged in behavior the natural consequence of which was to

harass, oppress, or abuse the Plaintiffs.  Settling Defendants dispute that any

violations occurred in connection with the collection of the accounts, and this case

was settled before any formal discovery was commenced or completed.  As the

Undersigned cannot say that Plaintiffs would be certain or even likely to prevail on

any claim of institutional harassment on a class basis, the Court concludes that a

potential result for the Class in this litigation would be an adverse judgment finding

no FDCPA violation at all by either of the Settling Defendants.

In light of this risk to the Class that no violation of the FDCPA occurred, the

Undersigned agrees with the parties that the terms of the settlement are fair under

the circumstances.  Section 1692k of the FDCPA provides that in a class action, class

16

members may recover their actual damages and additionally share in a fund that is capped at the lesser of 1% of the debt collector's net worth or $500,000.  15 U.S.C. § 1692k(a)(2)(A) provides for a $1,000 statutory award for individual claims, but this amount is only recoverable in a class action by "each named plaintiff," not each class member.  15 U.S.C. § 1692k(a)(2)(B).

In this case, Plaintiffs have not alleged facts supporting actual damages caused by the Settling Defendants.  *See Thomas v. Bowman Heintz Boscia & Vician, P.C.*, No. 1:08-cv-0042-WTL-TAB, 2009 WL 2778105, at *6 (S.D. Ind. Aug. 28, 2009) (holding conclusory statements of emotional distress are generally insufficient to state a claim for actual damages under the FDCPA).  The parties have indicated that financial information was exchanged informally, and both Plaintiffs and Settling Defendants represent that the Class Fund constitutes the maximum recovery available to the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B), as interpreted by the Seventh Circuit in *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000).  Significantly, however, the Settling Defendants have agreed to forgive all accounts of students of Harrison College with a last date of attendance on or after September 1, 2018, which were placed with Key 2 for collection, without requiring Class members to take any action to receive this relief.  (Dkts. 132-1 at 6, 158-1 at 2.)[6]  For those Class Representatives who only had accounts placed with AEA for collection, the Settling Defendants have agreed to provide incentive awards in the amount of

---

[6] As Harrison College closed in September of 2018, students with a last date of attendance on or after September 1, 2018, were students enrolled in the academic quarter preceding closure who may have been unable to transfer their academic credits elsewhere to complete their programs of study.  (Dkt. 139.)

$200.00 each, as these accounts were not owned by Key 2 or AEA, and thus cannot be forgiven by Settling Defendants.  (Dkt. 132-1 at 6.)  Accordingly, though Settling Defendants maintain that Plaintiffs' FDCPA claims are insubstantial and would not result in recovery for the Class, the Settling Defendants have agreed to provide benefits to the Class beyond the damages authorized by the FDCPA.  The Undersigned, in assessing the significant litigation risks and individual recovery amount, agrees with the parties and recommends that the overall settlement amount be deemed fair under the present circumstances of the case, because although the members of the Class forfeit their chance to recover the maximum $1,000 statutory award, the members of the Class who had accounts placed with Key 2 will receive debt forgiveness, gain certainty, avoid litigation costs, and recover now instead of possibly years later.

### 2.  Complexity, Length, and Expense of Litigation

The Seventh Circuit has instructed district courts to consider the likely complexity, length, and expense of continued litigation when determining whether a class action settlement satisfies Rule 23(e)(2).  *Synfuel Techs.*, 463 F.3d at 653. When litigation will be costly and lengthy, settlement is especially favored because "the present lawsuit will come to an end and class members will realize both immediate and future benefits as a result." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).  This factor weighs heavily in favor of approval of the settlement in this case.

18

If the Court approves the proposed Class Settlement Agreement, the case against Settling Defendants will end, and the Class members will be entitled to the relief that the Settling Defendants have promised, including debt forgiveness and the continued cessation of debt collection efforts on the forgiven debt.  If, on the other hand, the Court were to deny approval, protracted litigation would follow, particularly since the claims against Educational Management Corporation and related parties remain pending.  The parties would need to complete discovery on Class certification and the merits of the claims and engage in substantial motion practice. All of these proceedings would increase time and expense and could reduce or eliminate the recovery provided by this settlement.  *See, e.g., Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 230 (N.D. Ill. 2016) (noting the parties would have needed "to retain experts, analyze an enormous quantity of data, and engage in substantial motion practice, which could have resulted in reducing or negating, and certainly would have delayed, any judgment in favor of Plaintiffs").  Moreover, as noted above, the issues likely to be litigated between the Class and Settling Defendants might require submission of a certified question to the Indiana Supreme Court pursuant to Indiana Appellate Rule 64, which, in addition to adding uncertainty, would also substantially extend the length of the instant litigation.

### 3.  Amount of Opposition

The third factor the Court should consider when determining whether a class settlement satisfies Rule 23(e)(2) is the amount of opposition to the settlement. Significant opposition to a proposed settlement by interested parties should signal to

a court that the settlement should not be approved.  *Synfuel Techs.*, 463 F.3d at 653.

Here, no objections or exclusions have been filed. This absence of opposition strongly

favors a finding that the settlement is fair, reasonable, and adequate.

### 4.  Opinion of Competent Counsel

The fourth factor the Court should consider when determining whether a class

settlement satisfies Rule 23(e)(2) is the opinion of competent counsel.  *Synfuel*

*Techs.*, 463 F.3d at 653.  Class Counsel in this case are highly experienced litigators

with extensive expertise in both financial and educational issues who strongly

support the proposed settlement.  (Dkt. 173-1.)  No reasons exist for the Court not to

accept the recommendation of Class Counsel for final approval of the settlement.

### 5.  Stage of Litigation and Amount of Discovery

The final factor the Court should consider when determining whether a class

settlement satisfies Rule 23(e)(2) is the stage of the proceedings and the amount of

discovery completed at the time of settlement.  This factor is designed to allow the

Court to determine "how fully the district court and counsel are able to evaluate the

merits of plaintiffs' claims."  *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495–96 (N.D.

Ill. 2015).

Here, the parties are settling very early in the litigation, prior to any

discovery being conducted.  However, this Court's mediation procedures required

each party to submit detailed memoranda concerning the facts, claims, and defenses,

which the Undersigned reviewed and evaluated.  The Undersigned also had the

opportunity to hear from the Settling Defendants' CEO and from the Class

Representatives, and to witness the deliberations of the Class Representatives in deciding to accept the settlement, which the Undersigned found to be informed, thorough, and thoughtful.  Counsel for Plaintiffs and the Settling Defendants also cooperatively exchanged information prior to mediation.   Because the Class Settlement Agreement provides for relief beyond the damages authorized by the FDCPA, it is unlikely that discovery would cause the settlement offer to increase. Thus, the fact that the parties are still in the early stages of litigation does not weigh against final approval of the Class Settlement Agreement.  Furthermore, Class Counsel informed the Court that they believe that Harrison College's sudden closure created an extreme state of uncertainty, confusion, and stress on the former Harrison College students and that the cessation of collection efforts and debt forgiveness for some of those students had value beyond the economic benefit. Therefore, early resolution of the claims against Settling Defendants provides the Class benefits that could not be achieved through protracted litigation.

### 6. Absence of Collusion

In recent years, the Seventh Circuit has raised attention to and emphasized the importance of ensuring the absence of collusion in class action settlements. See *Pearson v. NBTY, Inc.*, 772 F.3d 778, 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014); *Eubank v. Pella Corp.*, 753 F.3d 718, 721 (7th Cir. 2014). In class action suits, named plaintiffs typically exercise little control over class counsel, and the class has little or no ability to hold accountable either the named plaintiffs or class counsel. *See Eubank*, 753 F.3d at 719. Class counsel and

defendants sometimes exploit these dynamics to generate a settlement that extinguishes the claims against the defendant and enriches class counsel and the class representatives with large awards, but does not provide commensurate or adequate benefit for the class. *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 230 (N.D. Ill. 2016) (citing *Redman*, 768 F.3d at 629; *Eubank*, 753 F.3d at 720)).

Nothing in the record before this Court suggests that the proposed settlement has been affected by collusion. The settlement was facilitated by the Undersigned through a day-long settlement conference and was the result of adversarial arm's-length negotiations between attorneys experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Accordingly, the Undersigned believes that no basis exists to conclude that the proposed settlement is the result of collusion or that would preclude this Court from finally approving the settlement.

### D. <u>Attorney's Fees</u>

On December 13, 2019, Plaintiffs filed their Motion for Attorney's Fees and Assistance Awards, requesting an award of $17,500.00. (Dkt. 172.) Federal Rule of Civil Procedure 23(h) allows the Court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In the Seventh Circuit, attorney's fees generally must reflect "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). "[T]he measure of what is reasonable is what an attorney would receive from a

paying client in a similar case." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000).

The proposed fee award of $17,500.00 is presumptively reasonable in this case. The Plaintiffs focus their attention on lead attorney Talcott J. Franklin, who devoted 42.3 hours to this portion of the case related to settlement. (Dkt. 173). Mr. Franklin attests that his lowest hourly rate for litigation representation in the last five years has been $875.00, which would result in a bill of $37,012.50 for his time alone in this matter. (Dkts. 173 at 3, 173-1.)  This time included meetings and communications with the Class, gathering documents from the Class concerning their debts and discovering the Settling Defendants' collection practices, drafting the complaint, negotiating the settlement, working with Settling Defendants to file motions for preliminary and final approval of the settlement, and answering numerous questions from the Class concerning both the settlement and the claims process.  (*Id.*)  Essentially, Class Counsel argue that they would be entitled to a significantly higher fee, based on the number of hours spent on this settlement, than they are currently seeking with the $17,500.00 figure.

While the Plaintiffs have three other attorneys spread among three different law firms, all of whom have contributed additional time and expense beyond that of Mr. Franklin, the Plaintiffs have not requested additional attorney's fees. Moreover, Class Counsel faces a risk of nonpayment, given the possibility that no FDCPA violation occurred in this case, as discussed above.

The quality of Class Counsel's performance is also relevant to determining the market rate. *Sutton*, 504 F.3d at 693; *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005); *see* Dkt. 173-1, Curriculum vitae of Talcott J. Franklin. Class Counsel worked to resolve this case quickly because of the impact of educational debts on students' credit ratings, abilities to borrow monies, and opportunities to move forward with their education and lives. First, Class Counsel obtained Settlement Defendants' agreement not to pursue collections pending mediation. Second, Class Counsel pushed for the early mediation that resulted in this settlement, including debt relief for students with Key 2 accounts, as well as other benefits for Class members. Third, Class Counsel waived attorneys' fees incurred prior to mediation in order to secure this important benefit for their clients.

In light of the benefits provided to the Class, including debt forgiveness, and the amount of time and effort expended by Class Counsel to secure these benefits, the Undersigned concludes the proposed fee award is reasonable.

## E. **Incentive Award**

The Class Settlement Agreement also provides for payments of $200.00 to Class Representatives Robin Boston, Sarah Covey, Devin Messamore, and Rachael Bushell in recognition of their services to the Class. (Dkt. 132-1 at 5.) A named plaintiff is an essential ingredient of any class action. *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 834 (7th Cir. 2018). Therefore, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. *Id*. In deciding whether an incentive award is proper and, if so, in what

amount, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In recognition of their efforts on behalf of the Class, the Undersigned recommends that Robin Boston, Sarah Covey, Devin Messamore, and Rachael Bushell receive incentive awards in the amount of $200.00. These Class Representatives devoted a significant amount of personal time to pursuing the litigation, including providing documents, maintaining contact with Class Counsel during the litigation process, and actively participating in the all-day Settlement Conference, which resulted in the Class Settlement Agreement. (Dkts. 173 at 4, 173-1.) These efforts justify the modest incentive awards requested in this case. *Compare Camp Drug Store*, 897 F.3d at 834–35 (concluding $1,000 incentive awards were reasonable "[g]iven how little exertion the named plaintiffs expended in pursuing this action"). The Undersigned can find no reason why this modest incentive award of $200.00 should not be approved.

## IV.   CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the parties' Joint Motion for Final Approval of Class Action Settlement (Dkt. 180) be **GRANTED** and the Plaintiffs' Motion for Final Approval of Attorney's Fees and Assistance Awards (Dkt. 172) be **GRANTED**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen (14) days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 2/28/2020

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record.

26